## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY DECARLI DBA ANTHONY
DECARLI, DMD, DECARLI DENTRISTRY,

              Plaintiff,

    v.

HARLEYSVILLE PREFERRED
INSURANCE COMPANY, NATIONWIDE
MUTUAL INSURANCE COMPANY,

             Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

3:22-CV-01183
(JUDGE MARIANI)

## MEMORANDUM OPINION

### I.   INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff filed this civil action for declaratory judgment and breach of contract in the

Court of Common Pleas of Lackawanna County on July 22, 2022. (Doc. 1-1.) Defendants

Nationwide and Harleysville removed the action to this Court on July 29, 2022, on the basis

of diversity of citizenship. (Doc. 1.) Defendants now move for dismissal of the Complaint.

(*See* Doc. 3.)

### II.   STANDARD OF REVIEW

A complaint must be dismissed under Rule 12(b)(6) if it does not allege "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must assert "factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, ... a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "factual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but ... disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

2

the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

In considering a Rule 12(b)(6) motion to dismiss, the Court generally relies on the complaint, attached exhibits, and matters of public record. *See Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The Court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the Court may not rely on other parts of the record in determining a motion to dismiss under Rule 12(b)(6). *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## III.   ANALYSIS

Plaintiff alleges that it is entitled to coverage under its insurance policy as a result of the closure of its dentistry practice due to an emergency disaster declaration on March 6, 2020, by Pennsylvania Governor Tom Wolf and the issuance of an order by the Governor on March 19, 2020, requiring that non-life sustaining businesses cease operations and

3

close physical locations until further notice. (Compl., Doc. 1-1 at 27-31.) In their Brief in

Support of their Motion to Dismiss (Doc. 4 at 12), Defendants note that the applicable

insuring agreement stipulates that "[the insurer] will pay for direct physical loss of or damage

to Covered Property at the premises ... caused by or resulting from any Covered Cause of

Loss." (Businessowners Coverage Form; Doc. 1-1 at 113.) A Covered Cause of Loss is

defined as "risks of direct physical loss unless the loss is excluded or limited. (*Id.* at 114.)

The Policy confers coverage for "actual loss of 'business income' you sustain due to the

necessary suspension of your 'operations' during the 'period of restoration." (*Id.* at 118.)

"The suspension must be caused by direct physical loss of or damage to the property...".

(*Id.*)

The Court finds that the Third Circuit's recent decision in *Wilson v. USI Insurance*

*Service LLC*, 57 F.4th 131 (3rd Cir. 2023) governs this case. In *Wilson*, the Third Circuit

predicted how the Supreme Court of Pennsylvania would rule as to the coverage of various

insurance policies that are akin to the insurance policy at issue in this case:

> We predict how the Supreme Courts of Pennsylvania and New Jersey would decide the issues before us and hold that the loss of use of a property's intended business purpose is not a physical loss of property covered by the businesses' insurance policies. Because the policies do not cover the businesses' losses, we need not reach the issue of whether the virus exclusions or any other exclusions apply. We will therefore affirm the judgments and orders of the District Courts.
>
> . . . .
>
> Central to this challenge is whether the businesses' inability to use their properties for their intended business purposes constitutes "physical loss of"

4

property as that phrase is used in the policies. Predicting how the Supreme Courts of Pennsylvania and New Jersey would decide this issue and following our decision in *Port Authority of New York and New Jersey v. Affiliated FM Insurance Company*, 311 F.3d 226 (3d Cir. 2002), we hold that it does not.

*Wilson*, 57 F.4th at 138, 140.

In light of the Third Circuit's decision in *Wilson*, 57 F.4th 131, Plaintiff's contention that it sustained a physical loss of or damage to' its property because of the Closure Orders is without merit.[1] Plaintiff specifically alleges that it "sustained a 'physical loss of or damage to' its property because of the Closure Orders which excluded Plaintiff from using its property." (Doc 9 at 10.) To establish coverage under Plaintiff's insurance policy, Plaintiff must show that their operations were suspended because of "direct physical loss of or damage to" its property. In *Wilson*, the Third Circuit examined the plain meaning of "physical loss of or damage," and concluded that:

> Physical damage to property therefore typically means "'a distinct, demonstrable, and physical alteration' of its structure." Port Auth. of N.Y. & N.J., 311 F.3d at 235 (quoting 10 Couch on Ins. § 148.46 (3d ed. 1998)). And

---

[1] Similarly, Plaintiff's contention that dismissal is not warranted because it successfully alleges that it is entitled to coverage under the insurance policy's "period of restoration" provisions is without merit. (Doc. 9 at 14-15.) In *Wilson, 57 F.4th 131,* the Third Circuit addressed these restoration provisions and concluded that:

> Other terms in the policies support our conclusion that loss of use must involve some physicality. For instance, coverage exists only during the "period of restoration," which ends when the property should be "repaired, rebuilt or replaced" or is moved to a new location. [...] [T]here is nothing to repair, rebuild, or replace in any of these cases. The businesses' loss of use would be — and was — cured by an end to the closure orders, and not by the rebuilding or repairing of any property. We must read the policies as a whole and give effect to the whole policy, including the "period of restoration" language.

*Wilson*, 57 F.4th at 143.

physical loss of property means a failure to maintain tangible possession of the structure.

In *Port Authority*, however, we explained that "[p]hysical damage to a building as an entity by sources unnoticeable to the naked eye must meet a higher threshold." *Id*. We held that in the case of asbestos contamination, physical loss or damage to property occurred

> only if an actual release of asbestos fibers from asbestos containing materials has resulted in contamination of the property such that its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable, or if there exists an imminent threat of the release of a quantity of asbestos fibers that would cause such loss of utility.

*Id*. at 236 (emphasis added).

We applied New Jersey and New York law in *Port Authority*, but nothing unique about those states' laws dictated the result. For that reason, and because there is no substantive law in Pennsylvania at odds with our decision, we predict that the Supreme Court of Pennsylvania would adopt a similar principle as *Port Authority* and hold that *Port Authority* applies in a case where sources unnoticeable to the naked eye — here, the coronavirus and resultant closure orders — have allegedly reduced the use of the property to a substantial degree. This standard ensures that an insured will have lost tangible possession of property sufficient to constitute physical loss or damage.

The businesses therefore must show that the functionalities of their properties were nearly eliminated or destroyed, that the structures were made useless or uninhabitable, or that there was an imminent risk of either of those things happening.

The businesses argue that their loss of the ability to use their properties for their intended business purposes meets this standard. We disagree. The businesses' argument is completely divorced from the physical condition of the premises. The businesses lost the ability to use their properties for their intended business purposes because the governors of the states in which they operate issued orders closing or limiting the activities of nonessential businesses, not because there was anything wrong with their properties. The

6

properties were not destroyed in whole or in part; their structures remained intact and functional.

*Wilson*, 57 F.4th at 142.

Because Plaintiff, like those in *Wilson*, 57 F.4th 131, alleges that its loss of the ability to use its property for its intended business purpose constitutes "physical loss or damage to" its property, the Court concludes that Plaintiff does not allege sufficient "facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Therefore, Defendants' Motion to Dismiss (Doc. 3) will be granted.

## IV.   CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss (Doc. 3) will be granted.[2]

Robert D. Mariani
United States District Judge

---

[2] Because the Court finds that granting leave to amend would be futile in light of *Wilson*, 57 F.4th 131, Plaintiff's Complaint (Doc. 1-1) will be dismissed with prejudice.